UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bruce C. Cohen,<br>*individually, as private attorney general, and on behalf of similarly situated individuals,*<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>Consilio LLC and Consilio Services, LLC,<br><br>　　　　　　　　　Defendants. | Case No. 20-cv-1689 (DSD/HB)<br><br>**ORDER ON MOTION** |

HILDY BOWBEER, United States Magistrate Judge

　　This matter is before the Court on Defendants Consilio LLC and Consilio Services LLC (collectively Consilio) Motion to Compel Further Responses to Defendants' Interrogatory No. 4, Set One [ECF No. 82]. Consilio seeks an order compelling Cohen to respond to Interrogatory No. 4 by identifying all current and former employees of Consilio who have communicated with Cohen's attorneys about the subject matter of Cohen's complaint, along with details of those communications. For the reasons set forth below, the Court grants in part and denies in part the motion.

**I.　　BACKGROUND**

　　This dispute arises out of Cohen's employment with Consilio as a document reviewer in Consilio's Minneapolis Office. (Compl. ¶¶ 8, 10, 28, 31, 33.) Consilio provides document review services for legal clients, which includes coding electronic

documents.  (*Id.* ¶¶ 30, 32.)  Before August 5, 2019, Consilio paid document reviewers for overtime work.  (*Id.* ¶¶ 35, 37.)  Thereafter, Consilio instituted a new overtime policy, without notifying its employees, that exempted document reviewers from overtime pay.  (*See id.* ¶¶ 38-48.)  Cohen and other similarly situated employees nationwide allege that Consilio is still obligated to pay them overtime despite the change in policy.  (*Id.* ¶¶ 43-49.)  Consilio believes that document review work constitutes professional legal services, which are exempt from overtime requirements.  (*Id.* ¶¶ 64, 119, 159, 190.)  Based on Consilio's position, Cohen asserts that his work as a document reviewer constitutes the unauthorized practice of law in Minnesota, Delaware, and Virginia.  (*See id.* ¶¶ 109, 120, 159-62, 190-93.)  Cohen is a licensed attorney but is not licensed to practice law in any of those states.  (*Id.* ¶¶ 117, 161, 172, 192.)  Cohen alleges that Consilio engaged in the unauthorized practice of law, split attorney fees with non-attorneys, formed an association of attorneys and non-attorneys, and allowed non- attorneys to control and direct attorney work.  (*See id.* 110-11, 131-32, 140, 142-43, 162, 166, 169-71, 174-75, 193, 197, 200-02, 205-06.)

On August 4, 2020, Cohen commenced this suit, alleging that Consilio violated the Fair Labor Standards Act (FLSA) and engaged in and required him to engage in the unauthorized practice of law.  The district court dismissed three counts, but left those asserting claims under FLSA, Minnesota Wage Theft Act, Minnesota FLSA, and Minn. Stat. § 181.101.  [ECF No. 39.]

In November 2021, Consilio informed Cohen and the putative Minnesota class members that it would be paying them the overtime and liquidated damages allegedly

owed (while reserving all its defenses against Cohen's claim that any such payments were owed at all). (Flanagan Decl. ¶ 10 [ECF No. 86].) Consilio then paid them, calculating the payments from the compensation and time records of those employees. (*Id.* ¶¶ 6–9.)

On January 24, 2022, Cohen's counsel emailed Consilio's counsel and stated he had

> received communications from some members of the putative Minnesota sub-class. Some communicated that they did not receive the above-specified communication or payment(s). Some questioned whether payment(s) represented final settlement of the litigation for overtime payments, interests, penalties, prevailing attorney fees and the like. Some questioned whether amounts deposited into their direct deposit accounts constituted an [sic] waiver of any rights or claims for Consilio alleged failure to pay overtime related damages. Some requested Consilio to provide an itemization of payment(s) received in order to verify correct calculation of payment(s). Those that so requested did not receive any such itemization.

(Def's Ex. B at 23–24 [ECF No. 85-1][1].) Cohen's counsel proposed that the parties send a "joint communication" to all members of the putative Minnesota sub-class stating that the November 2021 payments by Consilio were unilateral and had not been negotiated with Plaintiff, that if there were a settlement it would have to be approved by the court, and giving them information about how to access the PACER litigation file and how to contact Plaintiff's counsel. (*Id.* at 24.) Consilio's counsel rejected that suggestion and requested instead Cohen's counsel identify any members of the putative Minnesota sub-

---

[1] Defendants filed all exhibits at ECF 85-1. The Court cites the page numbers assigned by ECF.

3

class who allege they did not receive payment for overtime wages in November 2021. (*Id.* at 21–22.)  Cohen's counsel asserted that the identities of these individuals are protected from disclosure by the attorney-client privilege.  (*Id*. at 20.)

Meanwhile, on February 4, 2022, Consilio served interrogatories on Plaintiff. Interrogatory No. 4 requested:

> Identify all current and former employees of Defendant with whom you, your attorney, or any individual working on your behalf, have communicated regarding the allegations in the Complaint and/or your claims, including, but not limited to: (a) what was stated by each person involved in the communications; (b) whether you transcribed any statements as a result of or relating to such communications; (c) every document you gave to or received from any current or former employee identified above.

(Def's Ex. C at 31-32 [ECF No. 85-1].)  "Identify" an individual required the individual's "name, present or last known home address, present or last known home telephone number present or last known business affiliation and address, business telephone number, title, occupation and sex."  (*Id.* at 30.)

Cohen did not identify any individual and objected "to the extent this interrogatory seeks attorney client privileged communications between my attorneys, and their clients and/or prospective clients, and seeks attorney work product."  (Defs' Ex. A at 5 [ECF No. 85-1].)  Consilio contests the privileged nature of these communications, and filed the instant motion to compel full responses to Interrogatory No. 4.

The Court heard arguments on May 5, 2022, and took the motion under advisement while ordering the parties to meet-and-confer to clarify "whether communications between Plaintiff (as opposed to Plaintiff's counsel) and other

4

individuals on subject matter responsive to Interrogatory No. 4 have been disclosed." (May 5, 2022 Minutes [ECF No. 99].) The parties reported to the Court that the only responsive communications being withheld were communications with counsel and not with Cohen himself. (May 12, 2022 Status Report [ECF No. 98].) Thus, the issue before the Court is whether Cohen properly invoked attorney-client privilege to withhold information responsive to Consilio's Interrogatory No. 4 regarding individuals who communicated with his counsel.

## II.   DISCUSSION

Consilio argues that the attorney-client privilege usually does not extend to the identity of an individual who has communicated with an attorney, and that Cohen failed to prove that any exception to this standard applies to the identities sought in Interrogatory No. 4. (Defs' Mem. at 6–10 [ECF No. 84].) Cohen concedes that while prospective client identity is not normally privileged, "the privilege will apply where disclosure of the identity of a client would be tantamount to disclosing an otherwise privileged communication." (Pl's Mem. at 3–7 [ECF No. 96].) Cohen argues that the putative class members' communications with his counsel described in the January 24 email and in counsel's declaration to this Court are privileged communications involving legal advice, and the substance of those communications was disclosed in the January 24 email, so disclosing the identities of those members would effectively disclose the privileged communications. (Pl's Mem. at 7–12; Singh Decl. ¶¶ 3–7 [ECF No. 97].)

The Court must first determine whether the communications described in the January 24 email are privileged, then decide whether the exception Cohen advocates applies.

Parties may obtain discovery that is relevant and proportional to the needs of the case but a responding party may withhold otherwise responsive information based on privilege. Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26(b)(5)(A). In general, "confidential communications between individuals and attorneys for the purposes of obtaining or rendering legal advice [or services] are privileged," including those from a "prospective client, even if the client decides not to employ the lawyer." *Sandoval v. Am. Bldg. Maint. Indus., Inc.,* 267 F.R.D. 257, 273 (D. Minn. 2007) (*citing Upjohn v. United States,* 449 U.S. 383, 394–95 (1981); *In re Auclair,* 961 F.2d 65, 69 (5th Cir.1992)). This includes communications conveying a person's motive for seeking legal advice, any facts underlying the legal concern, and an attorney's advice. *See In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*, 926 F.2d 1423, 1431–32 (5th Cir. 1991). "Without this protection, individuals' ability to seek legal advice would be constrained, as they would not feel safe approaching an attorney about a possible case." *Sandoval*, 267 F.R.D. at 273.

The party asserting privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). That party "cannot rest on conclusory arguments in their memorandum of law . . . but instead must rely on competent evidence,

such as the explanatory affidavit from counsel setting forth facts under oath establishing the privileged nature of a communication." *Scalia v. Reliance Tr. Co.*, No. 17-CV-4540 (SRN/ECW), 2020 WL 2111368, at *5 (D. Minn. May 4, 2020). The common practice is to provide a privilege log. *See, e.g., Rabushka ex rel U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997) (privilege log and attorney affidavit). But privilege logs typically name the individuals involved in the privileged communication. *See, e.g., Nat'l Union Fire Ins. Co of Pittsburgh, PA v. Donaldson Co.*, Case No. 10-cv-4948 (JRT/JJG), 2014 WL 2865900, at *10 (D. Minn. June 24, 2014) (listing items typical to a privilege log).

Cohen did not provide a privilege log, arguing that a log naming the individuals would defeat the privilege objection. (Pl's Mem. at 11–12.) Cohen instead submitted a declaration from his attorney Earl Singh, who stated:

> 3. Following this communication and Defendants' payouts in November 2021, I was contacted verbally and in writing by various employees of Defendants raising questions and concerns regarding the payouts issued by Defendants in November 2021.
>
> 4. These individuals contacted me for legal advice and assistance concerning the questions and concerns they articulated to me. I provided legal advice to these individuals and addressed their questions and concerns.
>
> 5. These individuals contacted me in my capacity as an attorney representing Plaintiff and all others similarly situated in the above referenced matter.
>
> 6. My communications with these individuals were held with the implied or express understanding that the communications and the identities of these individuals would be kept confidential and not disclosed to Defendants.

(Singh Decl. ¶¶ 3–6.) The Court concludes that these representations, combined with the January 24 email, sufficiently demonstrate that the unnamed individuals described by Singh communicated with him for the purpose of obtaining legal advice about various aspects of Consilio's payment of overtime wages and liquidated damages which Cohen seeks through his complaint, and their communications were therefore privileged. *See Sandoval*, 267 F.R.D. at 273 (holding based on attorney's declaration and deposition testimony that plaintiffs' meeting with an attorney was for legal advice and therefore privileged.) Consequently, to the extent Interrogatory No. 4 seeks the *content* of communications between Singh and the current or former Consilio employees who contacted him for legal advice, as described in Singh's declaration and the January 24 email, the Court denies the motion to compel.

The Court observes that Interrogatory No. 4 is not limited to individuals who communicated with Cohen's counsel in order to seek legal advice about the November 2021 payments and communications from Consilio. Furthermore, Cohen's showing of privilege, which is premised exclusively on Singh's declaration and the January 24 email, covers only those individuals who contacted Singh to seek legal advice on that subject matter. Thus, if there are any individuals who communicated with Cohen's counsel about the claims or allegations in the case for any reason other than to seek such legal advice, Interrogatory No. 4 must be answered in full as to those individuals and communications. For the avoidance of doubt, this would include not only communications with individuals who never sought legal advice but also any

communication that pre-dated the November 2021 Consilio communications and payments even if the same individual later sought legal advice about those payments.

The more difficult issue, however, is whether the identities of all current and former employees of Consilio who communicated with Cohen's counsel to seek legal advice about the November 2021 payments and communications from Consilio about the claims and allegations in the case are privileged. As already noted, the attorney-client privilege ordinarily does not apply to prospective or current client identity, but only to the contents of their communications. *United States v. Sindel*, 53 F.3d 874, 876 (8th Cir. 1995). One exception is "the confidential communications exception . . . [which] protects client identity and fee information if, by revealing the information, the attorney would necessarily disclose confidential communications." *Id.* (quoting *In re Grand Jury Proc. (85 Misc. 140)*, 791 F.2d 663, 665 (8th Cir. 1986).) This occurs when the contents of a confidential communication have been disclosed and naming a client in the specific context presented would link him or her to that confidential communication, in effect disclosing the contents of that confidential communication. *See Reyes-Requena*, 926 F.2d at 1431; *N. L. R. B. v. Harvey*, 349 F.2d 900, 905 (4th Cir. 1965) ("Here, upon identification of the client, it will be known that the client wanted information about Shrader. More than the identity of the client will be disclosed by naming the client.")

Courts have been clear that the risk of destroying privilege is the only basis to allow a party to invoke this exception, not any collateral consequence the client might face if their name is disclosed. *Reyes-Requena*, 926 F.2d at 1431 ("We protect the client's identity . . . not because they might be incriminating but because they are

9

connected inextricably with a privileged communication—the confidential purpose for which he sought legal advice."); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 453 (6th Cir. 1983) ("[I]t is the link between the client and the *communication,* rather than the link between the client and the possibility of potential criminal *prosecution,* which serves to bring the client's identity within the protective ambit of the attorney-client privilege.") (citing *In re Grand Jury Empaneled February 14, 1978 (Markowitz),* 603 F.2d 469, 473 n. 4 (3d Cir.1979) (emphasis in original).)

The issue, then, is whether disclosure of the identities of the current and former Consilio employees who have communicated with Cohen's counsel to seek legal advice about something relating to the November 2021 payments and communications would reveal too much. The Court notes that the January 24 email from Singh describes several topics of legal concern raised by these individuals, but does not provide any detail that would allow Consilio to cross-reference which individuals communicated about which concerns or asked for advice on which issues.

> Some communicated that they did not receive the above-specified communication or payment(s). Some questioned whether payment(s) represented final settlement of the litigation for overtime payments, interests, penalties, prevailing attorney fees and the like. Some questioned whether amounts deposited into their direct deposit accounts constituted an [sic] waiver of any rights or claims for Consilio's alleged failure to pay overtime related damages. Some requested Consilio to provide an itemization of payment(s) received in order to verify correct calculation of payment(s).

(Def's Ex. B at 24.) The Court considered, therefore, whether the absence of such detail was sufficient to obscure the disclosure of privileged communications to escape the confidential communications privilege.

10

Neither the Eighth Circuit nor the Minnesota state courts have spoken on this issue, but the Fifth Circuit has held that "[i]f the disclosure of the client's identity will also reveal the confidential *purpose* for which he consulted an attorney, we protect both the confidential communication and the client's identity as privileged." *In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*, 926 F.2d 1423, 1431 (5th Cir. 1991) (emphasis added). The *Reyes-Requena* court offered the example of a person seeking legal advice about adopting a child, and reasoned that the privilege protected the person's name if revealing it would also reveal that they sought legal advice for the purpose of adopting. This suggests that even without a detailed reference to the specific questions asked or topics discussed, it is enough to invoke the exception that disclosure of the identities would reveal the general purpose of or motive for the communication – to seek legal advice about the November 2021 payments and communications from Consilio. Accordingly, the Court concludes that those identities, along with the other information about those communications requested by Interrogatory No. 4, may properly be withheld on grounds of privilege.

The Court understands Consilio's frustration with this position. By revealing to Consilio as much as he did about the communications from current and former employees, Cohen's counsel created the very situation that set up the potential that disclosure of their identities would disclose their purpose in contacting him. Consilio could have served Interrogatory No. 4 and Cohen could have objected and withheld the privileged communications without revealing the subject matter of the communications, and therefore without triggering the confidential communications exception to justify

11

withholding the identities of those whose communications had been for the purpose of seeking legal advice about the Consilio payments. If an *in camera* review had been needed to assure the assertion of privilege was well-founded, that could have been requested. But as tempting as it is to deny the privilege under these circumstances, the privilege does not belong to counsel, it belongs to the clients and prospective clients, and under these circumstances, the Court sees no option but to conclude the confidential communications exception applies and the identities need not be disclosed.

Although the Court has concluded Cohen need not provide in response to Interrogatory No. 4 the identities of the individuals who communicated with Singh to seek legal advice about the Consilio payments and communications, the Court will, for the sake of completeness, address Cohen's other arguments. He argues that the identities should be withheld on the additional ground that the employees and former employees are concerned about potential retaliation by Consilio. As stated above, collateral consequences are not an independent basis to apply the confidential communications exception. *Reyes-Requena*, 926 F.2d at 1431. Courts have specifically held that a speculative fear of retaliation is not sufficient. *See, e.g., Ho v. Ernst & Young, LLP*, No. C05-04867 JF HRL, 2008 WL 205595, at *1–2 (N.D. Cal. Jan. 24, 2008) (citing *Does v. Advanced Textile Corp.,* 214 F.3d 1058 (9th Cir.2000). This record supplies no basis to support even a speculative fear. Indeed, Cohen remains an employee of Consilio, and has not alleged retaliation by Consilio as a result of his involvement in this litigation.

Nor would the fact that Cohen's counsel promised confidentiality to these individuals be alone sufficient—absent a legitimate claim of privilege—to withhold the

information requested by Interrogatory No. 4, any more than Cohen could shield from disclosure any other person with relevant knowledge about the claims or defenses in the case by promising not to reveal their names or the subject matter of their knowledge.

Cohen also argues that the information sought by Interrogatory No. 4 is not relevant (Pl's Mem. at 16–17), but Cohen did not state a relevance objection in response to the interrogatory, and therefore waived it. He also argues he should not have to respond to the interrogatory because Consilio is in a better position to figure out to whom among the putative class members it allegedly still owes money. But even if that were true, Cohen did not raise a proportionality or burdensomeness objection to this interrogatory, and therefore waived that objection as well.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Compel Further Responses to Defendants' Interrogatory No. 4, Set One is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The motion is granted in that, no later than **June 24, 2022**, Cohen must answer Interrogatory No. 4 in full as to any individual who communicated with him or any representative, including but not limited to his counsel, regarding the allegations in the Complaint and/or Cohen's claims for any reason other than to seek legal advice about the November 2021 Consilio communications and payments.

2. The motion is denied in that Cohen need not answer any part of Interrogatory No. 4 with respect to any communication with counsel Earl Singh for the

purpose of seeking legal advice about the November 2021 Consilio communications and payments.

Dated: June 9, 2022

*/s Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge