UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bruce C. Cohen, individually, as private attorney general, and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>Consilio LLC, and Consilio Services, LLC,<br><br>Defendants. | Court File No. 0:20-cv-01689-DSD-DTS<br><br>**INDEX OF EXHIBITS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT** |

The following Exhibits, attached hereto, are submitted in support of Plaintiffs' Unopposed Motion for Approval of FLSA Collective Action Settlement, which is filed concurrently herewith, along with its supporting Memorandum:

| Exhibit Number | Description |
|:---:|---|
| 1 | Settlement Agreement and Release |
| 2 | Attorney Fee Declaration of Earl Singh and Approval of Service Award |
| 3 | Attorney Fee Declaration of Matt Pierce |

Dated: September 20, 2023.

Respectfully submitted,

*/s/ Earl J. Singh, Esq.*
Earl J. Singh Esq., ID # 0178263
Singh Advisors, LLC
711 Smith Avenue South
St. Paul, MN 55107
651-647-6250 (office)
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 (fax)
earl.singh@singhadvisors.com

*/s/ Matt Pierce*
Matt Pierce (Admitted PHV)
Asher, Gittler & D'Alba, Ltd.
200 W. Jackson Blvd, Suite 720
Chicago, Illinois 60606
312/263-1500 (phone)
312/263-1520 (fax)
mjp@ulaw.com

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bruce C. Cohen, individually, as private attorney general, and on behalf of similarly situated individuals, | Court File No. 0:20-cv-01689-DSD-DTS |
| Plaintiff, | |
| v. | |
| Consilio LLC, and Consilio Services, LLC, | |
| Defendants. | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into between Plaintiff Bruce C. Cohen, individually and on behalf of similarly situated individuals, including the Opt-In Plaintiffs, as defined herein, and Defendants Consilio LLC and Consilio Services, LLC, as defined herein.

## RECITALS

WHEREAS, on August 4, 2020, Cohen filed his Complaint in the above-captioned action ("the Lawsuit"), alleging, *inter alia*, that Consilio violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") on his own behalf and on behalf of all similarly situated employees, among other claims. Named Plaintiff specifically alleges that Consilio violated the FLSA by misclassifying him and other licensed attorney document reviewers as exempt from overtime;

WHEREAS, following the commencement of the Lawsuit, on or about November 29, 2021, Consilio made payments to the licensed attorney document reviewers that it had employed in Minnesota at any time between August 5, 2019, and November 29, 2021 in the total amount of $256,010.07 (overtime through October 24, 2021, plus liquidated damages for hours in excess of 48 per month in the amount of $46,993.01). Consilio asserts that those payments were equal to the total overtime wages and liquidated damages that the Minnesota employees claimed to be entitled to under the Minnesota Fair Labor Standards Act.

WHEREAS, on August 16, 2022, the United States District Court for the District of Minnesota ("the Court") granted the Parties' stipulation to conditionally certify an FLSA collective consisting of "[a]ll U.S. licensed attorney document reviewers employed by Consilio Services, LLC in the United States from August 5, 2019 to present who were

**Exhibit 1**

classified as exempt from overtime and were not paid for overtime for hours over 40 in a work week" and ordered notice to be sent to the collective;

WHEREAS, following the commencement of the Lawsuit and the Court's order conditionally certifying the FLSA collective, Opt-In Plaintiffs, as further defined herein, filed written consents to join the Lawsuit as party-plaintiffs, pursuant to 29 U.S.C. § 216(b), and are now included in this settlement of the Lawsuit;

WHEREAS, the Parties participated in an arms' length, private mediation with experienced mediator Lynn Cohn on February 6, 2023, via remote video conference. The Parties continued to negotiate after mediation and, on May 22, 2023, executed a Settlement Term Sheet generally outlining the terms of the agreed settlement;

WHEREAS, the Parties desire to resolve the asserted FLSA claims, including the FLSA claims of the Named Plaintiff and the Opt-in Plaintiffs, without admission of liability or wrongdoing by anyone, or further litigation related to the FLSA claims; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties enter into this Agreement, subject to the Court's approval, as follows:

1. **Definitions.**

   (a)    "Approval Order" means the Court's order granting approval of the Settlement.

   (b)    "Check Cashing Period" means the one hundred twenty (120) day period following the date on which the Settlement Administrator mails the Settlement Checks.  Settlement Checks not cashed within the Check Cashing Period shall escheat as unclaimed property pursuant to applicable state law.

   (c)    "Collective Counsel" refers to Earl John Singh, Singh Advisors, LLC, and Matthew J. Pierce, Asher, Gittler & D'Alba, Ltd.

   (d)    "Collective Period" means the period beginning on August 5, 2019, and extending through the Effective Date, as further defined herein.

   (e)    "Consilio" means Consilio LLC, and any of its parent organizations, holding companies, predecessors, affiliates, subsidiaries (including Consilio Services, LLC), divisions, business units, joint venturers, and related companies and their past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, contractors, agents, representatives, attorneys, insurers, partners, investors, shareholders, and administrators.

(f)     "Consilio Services" means Consilio Services, LLC, and any of its parent organizations, holding companies, predecessors, affiliates, subsidiaries, divisions, business units, joint venturers, and related companies and their past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, contractors, agents, representatives, attorneys, insurers, partners, investors, shareholders, and administrators.

(g)     "Day" or "days" refer to calendar days below unless specifically indicated as business days.

(h)     "Defendants" means Consilio and Consilio Services, as further defined herein.

(i)     "Defendants' Counsel" means Littler Mendelson, P.C.

(j)     "Effective Date" means the latest of: (i) the date of final affirmance on any appeal of the Court's Approval Order; (ii) the date of final dismissal, with prejudice, of the last pending appeal from the Court's Approval Order; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Court's Approval Order.

(k)     "Gross Settlement Fund" means the maximum aggregate payment by Defendants pursuant to this Agreement of One Million Seven Hundred and Fifty Thousand and Zero/100 Dollars ($1,750,000.00) to fund the QSF. The Gross Settlement Fund will be the sole source and maximum payment by Defendants and the Releasees to be paid as part of this Settlement Agreement and Release, and shall include: (1) all Settlement Payments to the Plaintiffs; (2) any Service Payment approved for the Named Plaintiff; (3) any of Collective Counsel's reasonable fees, costs and expenses approved by the Court; and (4) the reasonable fees and expenses of the Settlement Administrator. With the exception of Defendants' share of payroll taxes associated with the Settlement Payments paid to the Plaintiffs, which Defendants shall pay in addition to the Gross Settlement Fund, the Company and the Releasees shall not pay or be required to pay any amount in connection with this Agreement above and beyond the Gross Settlement Fund.

(l)     "Lawsuit" means the lawsuit captioned *Bruce C. Cohen, individually, as private attorney general, and on behalf of similarly situated individuals v. Consilio LLC, and Consilio Services, LLC*, No. 0:20-cv-01689-DSD-DTS, which was filed in the United States District Court for the District of Minnesota.

(m)  "Minimum Payment" means a Settlement Payment of $100 to each Plaintiff, regardless of the number of hours of overtime hours worked within the three-year limitations period.  Any Plaintiff who did not work any overtime hours within the three-year limitations period will receive the Minimum Payment, but will not receive any additional pro-rata share of the Net Settlement Fund. The Minimum Payments will be made by the Settlement Administrator out of the established QSF.  The Minimum Payments will be deemed wages and subject to normal payroll tax withholding and W-2 reporting.

(n)  "Minnesota Plaintiffs" means any Plaintiff who worked for Defendants in the State of Minnesota during the Class Period.

(o)  "Named Plaintiff" means Bruce C. Cohen.

(p)  "Net Settlement Fund" shall mean the Gross Settlement Fund less: (i) the approved Service Payment to the Named Plaintiff; (ii) Collective Counsel's approved out of pocket litigation expenses; (iii) the Settlement Administrator's fees and expenses, including the costs of mailing all notices and checks pursuant to this Agreement; and (iv) the Minimum Payments made to all Plaintiffs.

(q)  "Opt-In Plaintiffs" means the approximately 501 individuals who have consented to join the Lawsuit as party plaintiffs pursuant to Section 216(b) of the FLSA.

(r)  "Parties" refers collectively to Plaintiffs and Defendants.

(s)  "Plaintiffs" refers collectively to Named Plaintiff and the Opt-In Plaintiffs.

(t)  "Qualified Settlement Fund" or "QSF" means the qualified settlement fund set up by the Settlement Administrator into which the Gross Settlement Fund will be deposited in accordance with this Agreement. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Approval Order.  Interest, if any, earned on the QSF will become part of the Settlement Amount.

(u)  "Releasees" refers to and includes Defendants and any of their parent organizations, holding companies, predecessors, affiliates, subsidiaries, divisions, business units, joint venturers, and related companies and their past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, contractors, agents, representatives, attorneys, insurers, partners, investors, shareholders, and administrators, and any other related persons or entities, as well as any individual who could be included within the definition of "employer" under the Fair Labor Standards

4

Act ("FLSA") and/or any other federal, state, or local law or ordinance pertaining to the payment of wages in any location where Plaintiffs worked or resided, including but not limited to all officers, directors, managers, agents, and employees of Defendants and the aforementioned entities in their personal capacities.

(v)     "Service Payment" means the payment to the Named Plaintiff for his service on behalf of the Opt-In Plaintiffs and discussed in more detail in Section 6(b).

(w)     "Settlement Administrator" means Rust Consulting.

(x)     "Settlement Checks" means checks issued to Plaintiffs for their share of the Net Settlement Fund calculated in accordance with this Agreement.

(y)     "Settlement Payment" means each Plaintiff's respective portion of the Net Settlement Fund.

2.     This Agreement is entered into between the Plaintiffs and Defendants. This Agreement is subject to the terms hereof and approval by the Court. Plaintiffs and Defendants agree to fully settle, compromise, and resolve all wage and hour claims, including but not limited to claims under the FLSA, state and local law pertaining to the payment of all hours worked and claims for unpaid wages (including overtime compensation) and related claims for liquidated damages, interest, penalties, fees and costs that were or could have been brought in the Lawsuit based on the facts pled, on the terms set forth in this Agreement, except that Plaintiffs and Defendants agree that the release under this Agreement does not cover the Minnesota state law claims asserted in the Lawsuit, and any Minnesota Plaintiff shall not waive or release their remaining Minnesota state law claims. The parties will make their best efforts to ensure that the Minnesota claims remain before the District Court for adjudication after the FLSA claims are voluntarily dismissed.

3.     It is the intent of the Parties that the Approval Order shall be a final order with respect to the FLSA claims, and that after its entry, the order shall not be appealed, challenged, or modified in any way without the agreement of all Parties. To that end, and as a term of this Agreement, the Named Plaintiff and all Opt-In Plaintiffs shall waive any right they may have to appeal the Approval Order. The Parties recognize that the Opt-In Plaintiffs have consented to having the Named Plaintiff, along with any designated class representatives, make all decisions in this Lawsuit, including the terms of settlement and the release of claims, and that the Named Plaintiff, along with any designated class representatives, therefore has the authority to waive the appellate rights of the Opt-In Plaintiffs as a term of this Agreement. In the event any Opt-In Plaintiff objects to the waiver of appellate rights or any other condition of the Agreement, they will be advised that they may choose to opt out of the settlement and out of the lawsuit, and if they choose not to

opt out, they will be bound by all terms of the Agreement, including specifically the waiver of appellate rights.

4.      Defendants make this Agreement to avoid the cost of defending against the Plaintiffs' FLSA claims as set forth in the Lawsuit. By making this Agreement, Defendants do not admit that they or any Releasee violated any federal, state, or local law, rule, regulation, or ordinance; that any action taken with respect to Plaintiffs was wrongful or unlawful; or that Defendants or any Releasee breached any of their policies or procedures. Specifically, this Agreement shall not in any way be construed as an admission that Defendants or any Releasee misclassified Plaintiffs or any other person as exempt from overtime or otherwise acted wrongfully with respect to Plaintiffs or any other person, but shall be construed strictly as an instrument to avoid litigation of Plaintiffs' FLSA claims. This Agreement is not admissible to prove liability for or the validity of any claims that relate, refer, or pertain to the subject matter of this Agreement, or otherwise in any action or proceeding except to enforce the terms of this Agreement or as a defense to any claim.

5.      Collective Counsel have thoroughly investigated the facts of the Lawsuit and have diligently pursued investigation and prosecution of Plaintiffs' claims against Defendants. Based on their own independent investigation and evaluation, Collective Counsel believe that the settlement with Defendants for the consideration and on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interest of Plaintiffs given all known facts and circumstances, including the risk of significant delay, the risk of loss or limited recovery, and the defenses asserted by Defendants.

6.      **Gross Settlement Fund:**  Subject to Court approval of the Agreement, and on the terms set forth in this Agreement, Defendants will pay and promise as follows:

    (a)      Defendants will pay the Gross Settlement Fund of $1,750,000.00 into the QSF administered by the Settlement Administrator.

    (b)      Subject to Court approval, a service payment of up to $5,000.00 of the Gross Settlement Fund will be made to the Named Plaintiff. The service award will be paid by the Settlement Administrator out of the QSF.

    (c)      Subject to Court approval, Collective Counsel's out-of-pocket litigation expenses will be paid out of the Gross Settlement Fund.  This amount will be paid by the Settlement Administrator out of the QSF.

    (d)      Subject to Court approval the Minimum Payments of $100 will be made to each Plaintiff out of the Gross Settlement Fund.  The Minimum Payments will be paid by the Settlement Administrator out of the QSF.  These Minimum Payments will be deemed wages and subject to normal payroll tax withholding and W-2 reporting

(e)     The Settlement Administrator's fees and expenses shall be paid from the Gross Settlement Fund.

7.     **Net Settlement Fund.**   Subject to Court approval of the Agreement, and on the terms set forth in this Agreement, the Net Settlement Fund will be distributed as follows:

(a)     Subject to approval by the Court, Defendants agree to pay Collective Counsel up to thirty percent (30%) of the Net Settlement Fund as attorneys' fees, in full and complete satisfaction of all claims by Plaintiffs and Collective Counsel for attorneys' fees, costs and expenses of any kind whatsoever associated with the FLSA claims in the Lawsuit. The payment of attorneys' fees shall be paid by the Settlement Administrator from the QSF. Collective Counsel will ask the Court to approve the payment of said amount as part of their motion for approval of this Settlement Agreement. Defendants and Defendants' Counsel will not oppose such a request. The total attorneys' fees, costs and expenses actually paid will be as approved by the Court in its Approval Order. The enforceability of this Agreement is not contingent on the amount of attorneys' fees, costs or expenses awarded. Without limiting the generality of the foregoing, any dispute regarding the amount of attorneys' fees, costs or expenses, and/or any appeal related thereto, shall not affect or delay the finality of this Agreement, and shall not affect or delay the entry of judgment on Plaintiffs' FLSA claims in the Lawsuit. Collective Counsel shall provide the Settlement Administrator with instructions with respect to how much of this payment for attorneys' fees should be paid to each law firm.

(b)     Defendants, through the Settlement Administrator and from the QSF, will pay a Settlement Payment to each Plaintiff who fulfills the conditions and procedure specified in this Agreement. The Settlement Payments shall be calculated as follows: The Net Settlement Fund, less Collective Counsel's approved fees, will be divided between all Plaintiffs whom Collective Counsel have calculated as being owed more than $100 in overtime wages on a prorated basis, based on the total amount over overtime wages Collective Counsel has calculated each Plaintiff as being owed as a percentage of the overall total amount of overtime wages Collective Counsel has calculated as being owed. The Parties acknowledge that on or about November 29, 2021, Consilio made payments to the licensed attorney document reviewers that it had employed in Minnesota at any time between August 5, 2019, and November 29, 2021 (as stated above in the Recitals), and that Consilio asserts that those payments were equal to the total overtime wages and liquidated damages that the Minnesota employees claimed to be entitled to under the Minnesota Fair Labor Standards Act. As a result of those payments, the amounts calculated to be owed to any Minnesota Opt-In

Plaintiffs who received such payment shall be reduced accordingly to avoid any double recovery for those individuals. The Collective Counsel shall provide the breakdown of these payment amounts for each Plaintiff.

(c)     One-hundred percent (100%) of each Settlement Payment paid to a Plaintiff will be deemed wages and subject to normal payroll tax withholding and W-2 reporting. Defendants shall issue all necessary tax forms related to the Settlement Payments to Plaintiffs.

(d)     Defendants shall be responsible for all employer-paid taxes on the wage portions of the Settlement Payments, including FICA, FUTA and state unemployment, but shall not be liable for any other taxes associated with the Settlement Payment or the Settlement Payments. These employer-paid taxes shall be paid in addition to the Gross Settlement Fund.

(e)     Any Settlement Checks not cashed by Plaintiffs during the Check Cashing Period shall escheat as unclaimed property pursuant to applicable state law.

8.     **Mutual Full Cooperation.** The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may be reasonably necessary to implement the terms of this Agreement. The Parties shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Collective Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's approval of this Agreement and to obtain a final order or stipulation of dismissal of the FLSA claims in the Action upon completion of the terms and conditions of the Agreement as approved by the Court.

9.     **Duties Of The Parties Prior To Court Approval.**

(a)     Within fourteen (14) days of execution of this Agreement, Plaintiffs shall file an Unopposed Motion for final certification of the FLSA collective for purposes of settlement only. Plaintiffs have requested and noticed a fairness hearing, to be conducted on October 3, 2023, at 11:00 am.

(b)     The Parties will request that the Court, among other things, approve the settlement as final, fair, reasonable, adequate, and binding on all Plaintiffs.

10.     **Duties of the Parties Following Approval.**

(a)     Within twenty (20) days of the Court's Approval Order, Defendants shall provide the Settlement Administrator with a list containing the Plaintiffs' names and last-known addresses, and Collective Counsel shall provide the

dollar amounts to be paid to each Plaintiff as described in Paragraph 7(b). The Parties shall make reasonable efforts to confirm that the Settlement Administrator has the most current addresses consistent with the information provided by each Plaintiff in their consent form.

(b)    The Parties will have equal access to the Settlement Administrator and all information related to the administration of the settlement. The Settlement Administrator will provide regular reports to the Parties regarding the status of the claims administration process and distribution of the Settlement Checks to the Plaintiffs.

11.    **Settlement Administration.**

(i)    Rust Consulting has been selected as the Settlement Administrator. All settlement administration costs and fees for the Settlement Administrator shall be paid out of the Gross Settlement Fund.

(b)    Defendants will not be obligated at any stage to engage investigative services to locate Plaintiffs; however, the Settlement Administrator shall update Plaintiffs' last-known mailing address through the National Change of Address program certified by the United States Postal Service.

(c)    The Settlement Administrator shall be responsible for, in addition to any obligations stated herein or otherwise mutually agreed to by the Parties: establishing and maintaining a QSF; paying from the QSF the amount of attorneys' fees, costs and expenses awarded to Collective Counsel; distributing any Court-approved Service Payment to the Named Plaintiff from the QSF; calculating the Settlement Payments allocated to each Plaintiff based on the criteria set forth in this Agreement and the information provided by Collective Counsel; disbursing payment of appropriate taxes to be paid under the settlement from the QSF (including the employer taxes due from Defendants in addition to the Gross Settlement Fund); complying with all applicable tax reporting obligations including issuing 1099s and W-2s to Plaintiffs; preparing and filing all applicable tax forms and amendments or modifications required thereto; distribution of the Settlement Checks to the Plaintiffs; compiling copies of tendered Settlement Checks and providing those copies to Defendants; notifying Defendants' Counsel of any Plaintiffs who have not cashed their Settlement Checks within the Check Cashing Period, as defined above, facilitating the escheatment of such Settlement Checks according to applicable state law; and preparing a declaration regarding its due diligence in the claims administration process.

(d)    All disputes relating to the Settlement Administrator's performance of its duties, after good faith efforts by the Parties to first resolve such disputes,

will be referred to the Court, if necessary, which will have continuing jurisdiction over this Agreement until all payments and obligations contemplated by this Agreement have been fully carried out and thereafter to enforce the releases contained herein.

12.    **Claims—Binding Effect.**

(a)    The Named Plaintiff and all Opt-In Plaintiffs will be bound by the Court's Approval Order, the stipulation or Court's order dismissing their FLSA claims with prejudice, and the releases set forth in this Agreement.

(b)    None of the Parties, their counsel, nor any person on their behalf, shall seek to solicit or otherwise encourage anyone to object to the settlement, or appeal from any order of the Court that is consistent with the terms of this Agreement, or discourage participation in the settlement claims process; however, Collective Counsel reserve their right to engage in attorney-client privileged communications with Plaintiffs, which may include advice with respect to the terms and conditions of this Settlement Agreement, and in the event any Plaintiff raises objections or seeks to withdraw from this Settlement Agreement, providing advice on how to register any objections with the Court and/or how to withdraw from this Lawsuit.

13.    **Plaintiffs' Releases.**  Named Plaintiff and each Opt-In Plaintiff who receives a Settlement Check fully releases and discharges Defendants and Releasees from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, costs and expenses, damages, actions or causes of action of whatever kind or nature, whether known or unknown, expressly limited to wage and hour claims under the federal Fair Labor Standards Act and any other state, local or federal law, including, but not limited to, claims for alleged unpaid regular, minimum or overtime wages, alleged off-the-clock work, payment for all hours worked, miscalculation of wages, unreimbursed business expenses, and any damages, liquidated damages, penalties, interest, fees or costs derivative from those wage and hour claims available under any federal, state, or local law, that were or could have been alleged in the Lawsuit or that reasonably arise out of the acts alleged in the Lawsuit.  This release includes all claims for unpaid wages as alleged in the Complaint filed in the Lawsuit, including but not limited to claims for alleged off-the-clock work and claims for alleged failure to pay minimum wage or overtime, under any federal, state or local minimum wage statutes or laws, wage payment and collection statutes or laws, wage theft statutes or laws, overtime statutes or laws, federal, state or local common law and equitable claims, and pursuant to wage contract claims. Named Plaintiff and Opt-In Plaintiffs do not by this release waive any claim related to workers' compensation, unemployment compensation or discrimination law, or any other claims that cannot be released by law.

As of the Effective Date, Named Plaintiff and each Opt-In Plaintiff shall have released all claims as defined in this Section, even if any Named Plaintiff or Opt-In Plaintiffs do not cash a Settlement Check, except for any Opt-In Plaintiff who notifies the Court, prior to entry of the Court's Approval Order, that they wish to withdraw from this Lawsuit and from this Settlement Agreement.

The Minnesota Plaintiffs (including Named Plaintiff) shall not release any of the Minnesota state law claims alleged in the Lawsuit.

14.    **Withdrawal of Plaintiffs' Complaint With the Minnesota Lawyers Profession Board and Office of Lawyers Professional Responsibility.**  Named Plaintiff and Collective Counsel agree to withdraw Named Plaintiff's complaint or filing that has been filed or is pending with the Minnesota Lawyers Professional Board and Office of Lawyers Professional Responsibility, regarding the alleged unauthorized practice of law by Defendants' employees within 10 days of final adjudication of all claims asserted in this matter, including specifically the Minnesota state law claims asserted by Plaintiff, whether by settlement or judgment.

15.    **Plaintiffs' Acknowledgment Form:**  Within fourteen (14) days of receipt of the list containing the Plaintiffs' names and last-known addresses, the Settlement Administrator shall distribute an acknowledgment form to each Plaintiff.  The acknowledgement form shall state: "I understand and acknowledge that, as of the date of the execution of this acknowledgment, I am an attorney licensed to practice law in at least one jurisdiction in the United States."  Each Plaintiff must execute the acknowledgment form in order to receive a Settlement Check.

16.    **Distribution of Settlement Payments to Plaintiffs.**

        (a)    The QSF shall be funded by Defendants as follows:

                (i)    The Settlement Administrator will establish a "Qualified Settlement Fund" (QSF) as described in the Internal Revenue Code of 1986, as amended, within five business days after the Effective Date and will provide Defendants the QSF transfer information. The Settlement Administrator shall serve as Trustee of the QSF and shall act as a fiduciary with respect to the handling, management, and distribution of the QSF, including the handling of tax-related issues and payments.

                (ii)    Within ten (10) business days of the Effective Date, Defendants shall wire transfer to the Settlement Administrator the Gross Settlement Fund. Defendants shall wire transfer to the Settlement Administrator any funds required to cover the employer payroll taxes associated with wage payments made to Plaintiffs within ten (10) business days of the Effective Date.

(iii)    The Settlement Administrator shall disperse the attorneys' fees, costs, and expenses payment and the Service Payment as provided for by the Court, along with costs of administration to itself, from the QSF. Within five (5) business days after the Settlement Administrator receives Defendants' payment pursuant to this provision, it shall pay to Class Counsel via wire transfer or otherwise the total amount of attorneys' fees, costs and expenses approved by the Court and shall pay the Named Plaintiff any Service Payment approved by the Court. Collective Counsel shall provide the Settlement Administrator fully completed IRS Form W-9s for Class Counsel and Named Plaintiff.

(iv)    Within forty-five (45) days after the Effective Date, the Settlement Administrator shall mail the Settlement Checks to all Plaintiffs who return the acknowledgment form discussed in Section 15,  with instructions explaining the scope of the Proposed Settlement Agreement's release of claims and providing that the Collective Member's cashing or depositing of the settlement check shall constitute their acceptance of and agreement to be bound by that Agreement's terms, including specifically the full release of all wage and hour claims, including but not limited to claims under the FLSA, state and local law pertaining to the payment of all hours worked and claims for unpaid wages (including overtime compensation) and related claims for liquidated damages, interests, penalties, fees and costs  that were asserted or could have been asserted in this litigation based upon the facts alleged in Plaintiffs' operative pleadings through the date of the Court's approval of the settlement.

(b)    Plaintiffs shall have one hundred twenty (120) days from the date the Settlement Administrator mails the Settlement Checks to cash their settlement checks. Any funds associated with uncashed Settlement Checks after that date shall escheat as unclaimed property pursuant to applicable law.

(c)    The Settlement Payments and Named Plaintiff's Service Payment will not create any credit or otherwise affect the calculation of benefits provided under any benefit or compensation plan or program provided by the Defendants or any Releasee (such as 401(k), pension, bonus, severance, or deferred compensation plans), and no payment made pursuant to this Agreement will be compensation for purposes of such plans/programs, require any contribution or award under such plans/programs, or otherwise require or modify coverage, contributions, or benefits under such plans/programs, and the Plaintiffs will be deemed to have waived all such benefit or compensation plan or program claims that could arguably have arisen as a result of the Settlement Payments or the Service Payment, whether known or unknown by them, as part of their releases of claims under this Agreement.

17.    **Potential Voiding of the Settlement Agreement.**

(a)    If the Court does not approve the settlement terms set forth in this Agreement, or conditions approval on a material change to such terms, this entire Agreement shall be rendered voidable and unenforceable, and the Parties shall resume litigating the Lawsuit

unless the Parties jointly agree to another course of action. However, this Agreement shall not be rendered voidable or unenforceable based on the Court's approval or non-approval of a specific amount of attorneys' fees, costs or expenses or based on the Court's approval or non-approval of some or all of the Service Payment. The Court's failure to approve Collective Counsel's fees, costs and expenses request or Named Plaintiff's requested Service Payment shall not render the remainder of the Agreement unenforceable.

(b)  If, after a notice of appeal or a petition for writ of certiorari, or any other motion, petition, or application, the reviewing court vacates, reverses, or modifies the Approval Order such that there is a material modification to the settlement terms outlined in this Agreement, and the reviewing court's decision is not completely reversed and the Approval Order is not fully affirmed on review by a higher court, this entire Agreement shall be rendered voidable and unenforceable, and the Parties shall resume litigating the Consolidated Action unless the Parties jointly agree to another course of action.

(c)  If this Agreement becomes void and unenforceable, the Parties reserve all rights, claims, and defenses in the Lawsuit.  Additionally, if this Agreement becomes void and unenforceable, all negotiations, statements and proceedings related thereto shall be without prejudice to the rights of any Party, all of whom shall be restored to their respective positions in the Lawsuit prior to the settlement; and neither this Agreement, its ancillary documents, actions or filings the Parties agreed to, or any statements made in connection with the negotiation of the settlement, shall be admissible or offered into evidence in the lawsuit or any other action for any purpose.

18.  **Parties' Authority:**  The signatories hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto to the terms and conditions hereof.

19.  **Enforcement Actions.**

(a)  This Agreement is fully enforceable in the United States District Court for the District of Minnesota before the Honorable David S. Doty, or such judge as may be designated in his stead by the procedures of the Court, who shall retain jurisdiction to enforce this Agreement. However, before either Party seeks resolution of any dispute related to the enforcement of this Agreement with the Court, they shall make good faith efforts to resolve such dispute informally with the other Party

(b)  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Minnesota, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(c)  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit. This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiff, Opt-In Plaintiffs,

13

their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

20.     **Notices.** Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder by the Parties to this Agreement shall be in writing and shall be addressed as follows:

> <u>To Plaintiffs</u>:
> Earl John Singh
> SINGH ADVISORS, LLC
> 842 Raymond Avenue, Suite 200
> St. Paul, MN 55114
> earl.singh@singhadvisors.com
>
> Matthew J. Pierce
> Asher, Gittler & D'Alba, Ltd.
> 200 W. Jackson Blvd., Suite 720
> Chicago, IL 60606
> mjp@ulaw.com
>
>
> <u>To Defendants</u>:
> John Lassetter
> Littler Mendelson, P.C.
> 1300 IDS Center
> 80 South 8th Street
> Minneapolis, Minnesota 55402
> jlassetter@littler.com

21.     **Construction.** The Parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, extensive, arms' length negotiations between the Parties and that the Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of this Agreement.

22.     **Captions and Interpretations.** Section or paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

23.     **Modification.** This Agreement may not be changed, altered, or modified except in writing and signed by the Parties hereto, and approved by the Court, except that the Parties may mutually agree to reasonable extensions of time that do not affect any effective dates.

This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

24.    **Integration Clause.** This Agreement constitutes the entire agreement between the Parties relating to the subject matter contained herein, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, agreed to by the Parties in this matter, are merged herein. No rights hereunder may be waived except in writing.

25.    **No Prior Assignments.** This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators and successors. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

26.    **Signatories.** It is agreed that because the Opt-In Plaintiffs are so numerous, it is impossible or impractical and not required to have each Opt-In Plaintiff execute this Agreement.

27.    **Publicity.** Defendants' Counsel and Collective Counsel agree not to discuss the terms of this Agreement, the Parties' settlement, or the allegations and defenses in the Litigation with any news, media, or press outlet. If contacted by a member of such an outlet regarding matters related to this settlement or case, Defendants' Counsel and Collective Counsel shall respond only that they have "no comment."

28.    **Counterparts:** This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties. Signatures sent by facsimile machine, scanned signatures in Portable Document Format sent by email, or by electronic signature through DocuSign shall be deemed original signatures.

In witness whereof, the Parties have executed this Agreement as of the date set forth below.


Executed this 18th__ day of September_____, 2023

*Bruce C. Cohen*
_____
Bruce C. Cohen


Executed this _____ day of _____, 2023

By:    _____
       Mike Flanagan
       On behalf of Consilio LLC & Consilio Services, LLC

4876-9260-1214.1

16

In witness whereof, the Parties have executed this Agreement as of the date set forth below.

Executed this _____ day of _____, 2023

_____
Bruce C. Cohen

Executed this __18__ day of ___September____, 2023

By: _____
Mike Flanagan
On behalf of Consilio LLC & Consilio Services, LLC

4876-9260-1214.1

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Bruce C. Cohen, individually, as private
attorney general, and on behalf of similarly
situated individuals,

Court File No. 0:20-cv-01689-DSD-DTS

Plaintiff,

v.

**ATTORNEY FEE DECLARATION
OF EARL SINGH AND APPROVAL
OF SERVICE AWARD**

Consilio LLC, and Consilio Services, LLC,

Defendants.

---

### ATTORNEY FEE DECLARATION OF EARL SINGH

I, Earl Singh, upon penalty of perjury, state as follows:

1.      I am the owner and lead litigation attorney of Singh Advisors, LLC, a two-person law firm located 711 Smith Avenue South, St. Paul, Minnesota 55107. The law firm has been in existence under my ownership since 1986 under its prior name of Singh Law Firm, LLC until its name change in 1991 and addition of another attorney owner.

2.      Throughout its existence, Singh Advisors LLC has been and continues to be a general practice law firm, with focus on personal injury, employment law, business litigation, family law, and estate planning.

3.      I received my J.D. from Antioch School of Law in 1980, Washington, D. C., now known as the University of the District of Columbia David A Clarke Law School. I was admitted to practice in the State of Minnesota in 1986, and in the U.S. District Court for Minnesota in 1986.

4.      I have been the attorney of record in 76 cases in Minnesota District Court and the United States District Court of Minnesota. I have served as outside counsel of the

**Exhibit 2**

Resolution Trust Corporation (RTC) of the Federal Deposit Insurance Corporation (FDIC), and currently local counsel for a national law firm that specializes in personal injury. I have also served as an independent contractor for a local Minnesota law firm that specializes in employee focused employment law, assisting in litigation, including defending depositions and attending mediations.

5.      I am one of the primary attorneys for the Plaintiffs in the above-captioned case of *Cohen v. Consilio LLC, et al.*, designated as Case No. 0:20-cv-01689-DSD-DTS in the U.S. District Court for the District of Minnesota. In that role, I have represented the Named Plaintiff, as well as approximately 500 Opt-In Plaintiffs, in this collective wage and hour suit.

6.      It is the policy of Singh Advisors, LLC for all attorneys, paralegals and legal research clerks, and it is my personal practice, to contemporaneously record and maintain descriptive time and expense records for all services rendered and costs incurred. Time is kept in tenth-of-an-hour (.10) increments on the firm's time management software, CLIO.

7.      I have reviewed our firm's billing records and exercised billing judgment to exclude time that could be considered unnecessary or duplicative. My firm incurred 1,946.9 hours on this case from August 2019 to August 15, 2023. Total attorney time of 1,296 time entries for 1,946.90 hours result in attorney fees in the amount of $610,463.00. This time includes a total of 1,433.70 hours billed at my attorney rate, and 513.20 hours billed at my administrative rate (as explained below). My firm has not been compensated for any of our time and disbursements incurred. This matter was accepted on a 1/3 contingency. This firm

2

was prepared to make this investment knowing that litigation may not be successful and that we may not be awarded a fee of any kind.

8.    These hours were spent on various aspects of the litigation, including:

- Investigation the lawsuit

- Preparing Complaint and Motion for Amended Complaint

- Defending 12(b) motion to dismiss

- Attending first private mediation

- Engaging in highly contested discovery, served several requests for production of documents, interrogatories, admissions. Assisted clients respond to the same.

- Filed several motions to compel (formal and informally), including issues such as ESI protocols and search terms, reliance of advice of counsel and waiver of attorney client privilege, alleged unauthorized practice of law by the employer and its employee (the Plaintiffs)

- Attend numerous status conference with the Court.

- Negotiate conditional certification for the national collective.

- Communicate with initial putative national collective of about 5,000 licensed attorney employee clients with 499 opt into the national collective.

- Conduct damage assessment.

- Review state claim, including injunctive relief for conduct in Delaware and Virgina.

- Attend second private mediation.

- Draft Settlement Agreement, Motion to approve Settlement Agreement

The above time does not include preparation for the Fairness Hearing. We also will continue our representation to assist the Settlement Administrator with disbursement, tax documents and to respond to questions and concerns by the Collective.

9.      My billing rate for legal services performed in this matter is $390 per hour, for services performed beginning in August 2019, to the present. This rate is fair and reasonable for an attorney with the amount of experience and expertise I have, and it is consistent with the rate billed by other attorneys in this geographic area and field of law with comparable levels of experience and expertise. This hourly rate is consistent with my hourly billing rates for litigation. An example of competitive local Minneapolis loadstar rates for class action litigation attorney rates is the firm of Nichols, Kaster, LLP.  Partner rates fall between $350 to $500.  Associate rates between $300 to $350. Litigation support staff at $175.

10.      In this matter, I have two hourly rates.  In addition to my regular litigation rate for my legal services at $390 per hour, I also bill at $100 per hour for administrative related activities that I personally did the work. These administrative activities include communications with the putative national collective of about 5,000 licensed attorneys engaged as document review attorneys for the employer and defendant in this case, Consilio LLC. I also performed similar administrative activities for a putative Minnesota Rule 23 class of licensed attorneys of about 125 employees. It became clear that these attorney clients wanted in part to communicate and speak with me as their attorney instead of office personnel. Generally, out-going communications to the putative collective and

4

class was performed at $100 per hour. In responding to in-coming communications, I billed at $390 per hour.

11.    My firm incurred the following disbursement and expenses in this matter:

| Filing fee | 402 |
| PHV filing fee for Ryan Hagerty | 100 |
| PHV filing fee for Matt Pierce | 100 |
| Mediation 1 private mediation fee | 2,649.00 |
| Mediation 2 private mediation fee | 4,781.25 |
| Excel consultant data processing fee | 16,851.10 |
| Total disbursement and expenses | 24,883.35 |

12.    I have reviewed my contemporaneous time records of all legal services performed and expenses incurred by my firm in the course of representing the Plaintiff in this civil action. In my opinion, the time spent on legal services, disbursement and expenses was reasonable and necessary, resulting in very good results for the clients.

### The Proposed Service Award

13.    The Proposed Settlement also provides for payment of a "Service Award" to the Named Plaintiff, Bruce C. Cohen, in the amount of $5,000, for his participation as the authorized representative of all Plaintiffs in this matter. In this case, the Named Plaintiff took substantial actions to protect the interests of the collective group and to prosecute these claims to the benefit of the entire collective. Mr. Cohen initially made the pre-suit demand that he and all similarly-situated employees be paid for their alleged

uncompensated overtime wages. (Dkt. 1, Attachment D). He engaged in pre-suit investigation and provided information and records to Plaintiffs' counsel to build Plaintiffs' case; he responded to written discovery requests; he performed legal research and provided insight into the legal and factual issues that arose throughout the litigation; and he has been engaged in discussions with Plaintiffs' counsel at every step of the litigation to review and approve the various steps towards settlement, including attending and participating in both mediations. Based on these efforts, the amount of service payments included in the Proposed Settlement is fair and reasonable.

### The Settlement Administrator Fee

14.    As part of the Parties' Settlement Agreement, the Parties have retained a third-party Settlement Administrator to process the payments to the 499 Plaintiffs and related administrative tasks. The Settlement Administrator's fee is $12,128.00. This is a fair and reasonable amount and is a necessary expense in order to process the payments for these Plaintiffs.

15.    Further Declarant sayeth naught.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: September 18, 2023.

/s/ Earl Singh
Earl Singh

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bruce C. Cohen, individually, as private attorney general, and on behalf of similarly situated individuals, | Court File No. 0:20-cv-01689-DSD-DTS |
| Plaintiff, | **ATTORNEY FEE DECLARATION OF MATT PIERCE** |
| v. | |
| Consilio LLC, and Consilio Services, LLC, | |
| Defendants. | |

<u>**ATTORNEY FEE DECLARATION OF MATT PIERCE**</u>

I, Matt Pierce, upon penalty of perjury, state as follows:

1.      I am employed as an attorney with the Chicago law firm of Asher, Gittler & D'Alba, Ltd. ("AGD"), located at 200 W. Jackson Blvd., Suite 720, Chicago, Illinois 60606.

2.      AGD has been continuously in existence since 1951 and, throughout its existence, it has specialized in representing labor organizations, multiemployer employee benefit trust funds, and individual employees in all aspects of labor, employment, and employee benefits law. The firm has a national and well-regarded reputation in these areas of legal practice.

3.      I received my J.D. from the University of Texas School of Law in 2013. I was admitted to practice in the State of Texas in 2013, in the U.S. District Court for the Northern District of Texas in 2014, and in the U.S. District Court for the Eastern District of Texas in 2015. I was admitted to practice in the State of Illinois on October 17, 2017, and was admitted to practice in the U.S. District Court for the Northern District of Indiana

**Exhibit 3**

in 2017, the U.S. District Court for the Northern District of Illinois in 2018, the U.S. District Court for the Central District of Illinois in 2018, and the Seventh Circuit Court of Appeals in 2020. I changed my status with the State Bar of Texas to inactive status in 2018.

4.     From 2013 until July 2017, I practiced labor and employment law with the law firm of Tanner and Associates, P.C., in Fort Worth, Texas. I relocated to Chicago, Illinois in August 2017. While my application for admission to practice in the State of Illinois was pending, I began to work for AGD as a law clerk, starting in September 2017. After my application was accepted and I was admitted to practice in Illinois, I began working as an associate attorney for AGD, starting in November 2017. I become a partner with AGD in July 2021.

5.     Throughout my career, I have specialized primarily in employee-side employment law and union-side labor law. I have represented various labor organizations, employee benefit funds, union officers, and individual employees in civil litigation in state and federal court, including various individuals and collective groups of employees in wage and hour cases under the FLSA and state laws, as well as in proceedings before administrative agencies such as the National Labor Relations Board and the Department of Labor. I am also a contributing editor for a treatise on labor law, I have written and lectured on labor and employment law matters, and I am actively engaged in the ABA's Labor and Employment Law Section.

6.     Within AGD, I have acted as one of the primary attorneys for the Plaintiffs in the above-captioned case of *Cohen v. Consilio LLC, et al.*, designated as Case No. 0:20-cv-01689-DSD-DTS in the U.S. District Court for the District of Minnesota. In that role, I

have represented the Named Plaintiff, as well as approximately 500 Opt-In Plaintiffs, in this collective wage and hour suit.

7.      I was approved to appear in this case on a *pro hac vice* basis, along with attorney Ryan A. Hagerty, who at that time was also a partner at AGD. (Dkt. 57).

8.      It is the policy of AGD for all attorneys, paralegal and legal research clerks, and it is my personal practice, to contemporaneously record and maintain descriptive time and expense records for all services rendered and costs incurred. All time entries are measured in fifteen-minute increments.

9.      My billing rate for legal services performed in this matter is $375 per hour, for services performed beginning around December 2021, to the present. This rate is fair and reasonable for an attorney with the amount of experience and expertise I have, and it is consistent with the rate billed by other attorneys in this geographic area and field of law with comparable levels of experience and expertise.

10.     This hourly rate is consistent with my hourly billing rates that have been approved by courts in the past. For example, in *Board of Trustees, Construction Workers Pension Trust Fund – Lake County and Vicinity v. Jones-Perteet, et al.,* Case No. 2:18-CV-90-JEM (N.D. Ind.), the U.S. District Court for the Northern District of Indiana approved an award of attorneys' fees that included legal services that I performed representing the plaintiffs in that employee benefits litigation. For that matter, the court approved my rate of $235 per hour for services performed through June of 2018, which the court found to be reasonable. In *Oak Lawn Professional Firefighters Association, Local 3405, IAFF, v. Village of Oak Lawn,* Case No. 2019-CH-08715 (Cook Cty. Cir. Ct.), the

3

Circuit Court of Cook County, Illinois approved an award of attorneys' fees that included legal services that I performed representing the plaintiffs in that labor litigation. For that matter, the court approved my rate of $300 per hour for services performed through November of 2019.

11.     Ryan Hagerty received his Juris Doctorate degree from the DePaul University College of Law in 2001, and he has been admitted to practice in the U.S. District Court for the Northern District of Illinois since 2001, including the trial bar, the U.S. Court of Appeals for the Seventh Circuit since 2004, and the U.S. District Court for the Northern District of Indiana since 2007. Mr. Hagerty was an attorney and partner at AGD until around August 2022, when he left the firm for another employment opportunity. During Mr. Hagerty's tenure with AGD, he personally represented a number of plaintiffs in various employment law matters, including FLSA collective actions, FMLA, and Title VII litigation.  In addition, he has written and lectured on FLSA matters, and is actively engaged in the ABA's Labor and Employment Law Section.

12.     Mr. Hagerty's billing rate for legal services performed in this matter is $450 per hour, for services performed between 2021 and 2022. This rate is fair and reasonable for an attorney with the amount of experience and expertise Mr. Hagerty has, and it is consistent with the rate billed by other attorneys in this geographic area and field of law with comparable levels of experience and expertise.

13.     Mr. Hagerty's hourly rate is consistent with the hourly billing rates that have been approved for him by courts in the past. For example, in *Murczek, et al. v. Village of Broadview,* Case No. 07 CV 1211 (N.D. Ill.), the U.S. District Court for the Northern

District of Illinois approved as reasonable an hourly rate of $325 per hour for work Mr.

Hagerty performed in 2006, 2007 and 2008. In *Boyce, et al. v. The Jazz Group, et al.,* Case

12-C-4212 (N.D. Ill.), the U.S. District Court for the Northern District of Illinois approved

as reasonable an hourly rate of $375 per hour for work performed by Mr. Hagerty through

May 2012.  In *Poe, et al. v. County of Lake, Lake County Indiana et al.,* Case No. 2:12-cv-

311 (N.D. Ind.), another FLSA collective wage and hour lawsuit, the U.S. District Court

for the Northern District of Indiana approved as reasonable the following hourly rates for

Mr. Hagerty: $375 per hour for all work performed through December 31, 2012; $400 per

hour for all work performed from January 1, 2013, through December 31, 2014; $425 per

hour for all work performed from January 1, 2015, through December 31, 2017; $450 per

hour for all work performed from January 1, 2017, through December 31, 2018; and $475

per hour for all work performed from January 1, 2019, through November 2019.

14.     Mr. Hagerty's historically-approved hourly billing rates support the

reasonableness of my hourly rate. Mr. Hagerty's years of practice and experience handling

employment and wage and hour litigation was comparable to my current years of practice

and experience handling these matters when he was awarded the rate of $375 per hour,

which is my current hourly rate.

15.     Joe Weishampel is an associate attorney at AGD. Mr. Weishampel received

his J.D. from Loyola University in 2015. He then served as a staff attorney in the Circuit

Court of Cook County, Chancery Division. In 2018, he began his work in the fields of

employee benefits and labor law at a private law firm. He joined AGD in July 2021. Mr.

Weishampel is licensed to practice before the Supreme Court of Illinois, the U.S. Court of

Appeals for the Seventh Circuit, the U.S. District Court for the Northern District of Illinois, and the U.S. District Court for the Northern District of Indiana.

16.    Mr. Weishampel's billing rate for legal services performed in this matter is $300 per hour, for services performed from November 2021 to the present. This rate is fair and reasonable for an attorney with the amount of experience and expertise Mr. Weishampel has, and it is consistent with the rate billed by other attorneys in this geographic area and field of law with comparable levels of experience and expertise.

17.    AGD regularly employs legal research clerks, who are typically law students or recent graduates from law school with an interest or background in labor and employment law. All law clerks' billing rate for research and similar services performed in this matter is $100 per hour. This rate is fair and reasonable for a law clerk and is consistent with the rates billed by law clerks employed by other firms in this geographic area and field of law.

18.    In this litigation, I have performed a total of 154.75 hours of legal services through August 15, 2023. Mr. Hagerty has performed a total of 117 hours of legal services; Mr. Weishampel has performed a total of 5.25 hours of legal services; and legal research clerks have performed a total of 16.50 hours of research and related services. This equals a total of 293.50 hours of legal services performed in this case by AGD personnel. At each individual's hourly billing rate, the total amount of attorneys' fees incurred in this matter through August 15, 2023, is $113,906.25.

19.    Attached to this Declaration is a report, generated from AGD's billing software, which shows a Timekeeper Activity Summary listing the total hours and billing

rates for all AGD personnel who have worked on this case through August 15, 2023. That report summarizes the contemporaneous time entries for this matter and confirms the total amount of hours, hourly billing rates, and total amount of attorneys' fees for this time period.

20.     Upon review of the contemporaneous time and expense records maintained by each of the individuals discussed above, all legal services performed and expenses incurred by this firm were necessary in the course of representing the Plaintiff in this civil action, and the time spent was reasonable in my opinion.

Further Declarant sayeth naught.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: September 14, 2023.

*/s/ Matt Pierce*
Matt Pierce

# Asher, Gittler & D'Alba, Ltd
## Matter Billing Detailed Report
#### 01/11/2008 - 08/15/2023
#### *Client Funds Balance(As of Report Print Date)

**Bruce Cohen-Bruce Cohen/RAH01-COHEN**

| | |
|---|---|
| Matter Owner | Ryan Hagerty |
| Client Funds-Operating | 0.00 |
| Client Funds-Trust | 0.00 |
| Unpaid Balance | 0.00 |

**Timekeeper Activity Summary:Bruce Cohen-Bruce Cohen/RAH01-COHEN**

| Timekeeper | Time Spent | Rate | Amount |
|---|---|---|---|
| Ryan Hagerty | 117.00 | 450.00 | 52,650.00 |
| Joe Weishampel | 5.25 | 300.00 | 1,575.00 |
| Matthew J Pierce | 154.75 | 375.00 | 58,031.25 |
| Law Clerk | 16.50 | 100.00 | 1,650.00 |
| **Total** | **293.50** | | **113,906.25** |

**Professional Service Summary:**

| | |
|---|---|
| Total Hold Hours | 0.00 |
| Total Unbilled Hours (Billable) | 293.50 |
| Total Unbilled Hours (Non Billable) | 0.00 |
| Total Unbilled Hours (No Charge) | 0.00 |
| Total Billed Hours | 0.00 |
| Total Hold Amount | 0.00 |
| Total Unbilled Amount (Billable) | 113,906.25 |
| Total Unbilled Amount (Non Billable) | 0.00 |
| Total Billed Amount | 0.00 |
| Total Paid Amount | 0.00 |